# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

**UNITED STATES OF AMERICA**

v.

**CHRISTOPHER ALEXANDER**
**LaSHAWNDA WILSON, aka LaShonda Wilson**
**CRAIG ALEXANDER**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN - 5 2001
CRIMINAL COMPLAINT
CLERK, U.S. DISTRICT COURT
By _____ Deputy

CASE NO. 5:01-M-087

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

Beginning in and around the summer July, 2000 and continuing through in and about March, 2001, in the Lubbock Division of the Northern District of Texas and elsewhere, **CHRISTOPHER ALEXANDER, LaSHAWNDA WILSON, aka LaShonda Wilson**, and **CRAIG ALEXANDER**, defendants herein, did unlawfully, wilfully, knowingly and intentionally combine, conspire, confederate and agree together and with other persons known and unknown, to commit offenses against the United States, namely to unlawfully, knowingly and intentionally distribute and possess with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of Cocaine Base (Crack Cocaine), a Schedule II Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii) and 846.

I further state that I am a Task Force Officer assigned to the Drug Enforcement Administration, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  /X/ yes  /_/ no

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

June 5, 2001                                  at   Lubbock                      , Texas
Date                                               City and State

Nancy M. Koenig                               _____
U.S. Magistrate Judge                         Signature of Judicial Officer
Name & Title of Judicial Officer

AFFIDAVIT

I, Bobby D. Price, a Task Force Officer for the Drug Enforcement Administration (DEA), being duly sworn, state that I am empowered by law to conduct investigations of and to make arrests for offenses in violation of both state and federal narcotics laws.

I have been a police officer for the City of Lubbock for twenty-six (26) years. During this time I have been assigned to the Patrol Division for a total of fourteen (14) years performing duties as a patrol officer as well as an accident investigator / accident reconstructionist. Included with my patrol duties were temporary assignments to the Police Training Division as an instructor in several different areas of expertise. I was assigned to the Police Motorcycle Section for a total of eleven (11) years. During my law enforcement career, I have attended numerous schools and in-service training courses related to police investigations to include the Drug Enforcement Administration Basic Narcotics course, Clandestine Laboratory course, Clandestine Laboratory Site Safety course as well as the Clandestine Laboratory Tactical Entry course. During my current assignment, I have been involved in investigations concerning the violations of drug laws of the United States including violations of Title 21, United States Code 841, Title 21, United States Code 846, Title 18, United States Code 924(c) and 922(g)(1) as well as Title 26, United States Code 5861(d).

I am familiar with and have participated in all the normal methods of investigations, including, but not limited to, visual surveillance, general questioning of witnesses, use of evidentiary and documentary search warrants, use of confidential sources and undercover operations.

Affiant believes probable cause exists to believe that from in and around July, 2000 and continuing through in and around March, 2001, in the Lubbock Division of the Northern District of Texas and elsewhere, **LASHAWNDA WYNETTA WILSON, aka LaShonda Wilson, CHRISTOPHER MORRIS ALEXANDER, and CRAIG LAMONE ALEXANDER,** defendants, unlawfully, knowingly and intentionally did combine, conspire, confederate and agree together and with other persons both known and unknown to commit offenses against the United States, namely to distribute and possess with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of Cocaine Base (Crack Cocaine) in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii) and 846.

1. On October 19, 2000, at approximately 4:35 p.m. at the Lubbock International Airport in Lubbock, Texas a black female approached the security checkpoint entrance. The black female put a "Greatland" black/tan backpack through the x-ray machine. The black female went through the metal detector. A security officer, Harvey McEachern, then conducted an explosive detection test on the backpack. The black female started questioning Mr. McEachern as to what he was doing and why. The black female was then motioned back to the entrance way of the checkpoint and walked back through the metal detector. After several minutes, the security supervisor, Mrs. Lorraine White, notified the Lubbock International Airport (LIA) Police when it appeared that the black female was not coming back to get the backpack.

AFFIDAVIT IN SUPPORT OF COMPLAINT–ALEXANDER & WILSON - Page 1

2. Officer Amy Penn of the LIA Police Department responded to the security checkpoint and took custody of the backpack. Officer Penn noticed a Greyhound bus tag and a Southwest Airlines tag on the backpack. Both bore the name "Lashonda Wilson" with an address of 2918 E. Auburn, Lubbock, Texas. An examination of the inside of the backpack revealed four towels. Some of the towels were cold to the touch. Inside one of the towels was sixteen (16) baggies each containing a tannish rock-like substance. A check of the area by the police for the black female had negative results. The Drug Enforcement Administration (DEA) was notified. Task Force Sergeant (TFO Sgt.) Jerry Brewer and Task Force Officer (TFO) Randy Atchley responded and took custody of the backpack and its contents.

3. The baggies and the contents were submitted for fingerprint and drug analysis to the DEA South Central Laboratory. The analysis showed a net weight of 1730 grams (approximately 3.8 lbs) of Cocaine Base (Crack Cocaine) with a purity of seventy percent (70%). Fingerprint analysis on the baggies indicated the presence of **LASHAWNDA WILSON's** fingerprints.

4. On November 2, 2000, Latricia Lynn Perry, Rhodesia Yvonne Harris, and Charles Devroe were arrested pursuant to a search warrant executed by the Lamesa, Texas Police Department at 902 N. 5th Street in Lamesa where approximately 28.51 grams of Crack Cocaine was seized. Harris, in a written statement, identified a subject known as "Little K" a.k.a. **CRAIG ALEXANDER** as the supplier of the Crack Cocaine. Harris and Perry sold Crack Cocaine for **CRAIG ALEXANDER**. Harris estimated they sold approximately sixteen thousand ($16,000) dollars worth of Crack Cocaine in October of 2000. Perry and Harris were incarcerated at the Dawson County Jail.

5. On December 9, 2000, **LASHAWNDA WYNETTA WILSON** and Valsha Green were arrested for possession of approximately 13.5 grams of Crack Cocaine subsequent to a traffic stop in Lamesa, Texas. **WILSON** also had outstanding warrants from Tom Green and Lubbock Counties for drug related charges. Green, a juvenile at the time, informed Lamesa Police Department Investigator Tommy Flores that **WILSON** was selling Crack Cocaine for "14K" in Lamesa, Texas. "14K" is a known street name for **CHRIS ALEXANDER**, brother of **CRAIG ALEXANDER**. **WILSON** was incarcerated at the Dawson County Jail.

6. **WILSON**, Perry, and Harris occupied the same jail cell at the Dawson County Jail from December 9th to December 13th, 2000. Harris was present when **WILSON** and Perry talked about almost getting caught at the Lubbock Airport with sixty thousand ($60,000) dollars worth of Crack Cocaine. **WILSON** advised that she and **CRAIG ALEXANDER** went inside the airport while Perry waited outside in a car. **WILSON** advised the x-ray machine showed the packages of Crack Cocaine and the security guard would not give it back. Harris later advised that **CHRIS ALEXANDER** typically packaged the Crack Cocaine in this manner. **WILSON** and **CRAIG ALEXANDER** left

AFFIDAVIT IN SUPPORT OF COMPLAINT–ALEXANDER & WILSON - Page 2

the airport and got into a car with Perry and left the area. The Crack Cocaine belonged to **CHRIS ALEXANDER** and **WILSON** was going to deliver it for him in Atlanta, Georgia. **WILSON** told Harris that on prior trips the Crack Cocaine would be secreted in feminine hygiene pads. Harris was interviewed about this conversation in February of 2001 by DEA TFSgt. Jerry Brewer and TFO Randy Atchley.

7. Rhodesia Harris advised TFSgt. Brewer and TFO Atchley that she had known **LASHAWNDA WILSON, CHRIS ALEXANDER, CRAIG ALEXANDER,** and Latricia Perry for approximately six months. Harris stated that she and Ray Devroe were seeing each other socially at the time of their arrests in Lamesa, Texas. Harris indicated that she was also seeing **CHRIS ALEXANDER** socially. **LASHAWNDA WILSON** was dating **CHRIS ALEXANDER** too. **WILSON** also would "hit on" Devroe. This caused some friction between her and **WILSON** at times. Latricia Perry and **CRAIG ALEXANDER** were dating at the time as well. Harris stated that as late as January 30, 2001 she was approached by **CHRIS ALEXANDER** to sell drugs for him in the Atlanta, Georgia area. Harris advised that **CHRIS ALEXANDER's** cell phone number was 806-535-8550. Subscriber records indicate that this number is under the name of **LASHAWNDA WILSON**. Harris advised she was present in September of 2000 with Latricia Lynn Perry, **CHRIS ALEXANDER,** and **CRAIG ALEXANDER** at Perry's apartment in Lubbock, Texas when the **ALEXANDER** brothers manufactured an unknown amount of Crack Cocaine for her and Perry to take back to Lamesa, Texas to sell.

8. Harris estimated that **CRAIG ALEXANDER** brought in four (4) ounces of Crack Cocaine a week to Lamesa for her and Perry to sell. Harris had been staying with Perry for approximately two months prior to their arrests in November. Harris also reported observing **CRAIG ALEXANDER** manufacture Crack Cocaine while in Lamesa, Texas. Harris advised a microwave oven was used in the process to transform the Cocaine Powder into Cocaine Base (Crack Cocaine). The Crack Cocaine was then wrapped in a towel and put in a freezer because the Crack Cocaine would still be wet. Your affiant knows that a microwave oven is typically used to heat the Cocaine Powder along with other ingredients to cause a transformation into Cocaine Base (Crack Cocaine).

9. On December 13, 2000, **LASHAWNDA WILSON** bonded out of the Dawson County Jail. Records indicate she was released to **CHRIS ALEXANDER**. Latricia Perry was released from the jail on January 6, 2001.

10. On January 23, 2001, a state search warrant was executed by the South Plains Regional Narcotics Task Force at 2702 E. 9th Street, Lubbock, Texas. This is the known residence of **CHRISTOPHER ALEXANDER** and Ursula Jean Tipton. Thirty-two thousand five hundred twenty-nine ($32,529.00) dollars was seized. Lubbock Police Department Investigator Dwayne Gerber *mirandized* and interviewed Ursula Tipton. Tipton admitted knowing that **CHRISTOPHER ALEXANDER** sold Crack Cocaine for a living.

11. On January 31, 2001, Lamesa Texas Police Department initiated a controlled undercover purchase of .4 grams of Crack Cocaine from Latricia Perry and **CRAIG ALEXANDER** at 608 N. 5th street in Lamesa. A subsequent search warrant was executed later in the day. No other drugs were found but the buy money was located with nearly four hundred ($400) dollars in **CRAIG ALEXANDER's** vehicle. Perry and **CRAIG ALEXANDER** were released pending filing of charges.

12. On February 4, 2001, **CRAIG ALEXANDER**, Latricia Perry, and **LASHAWNDA WILSON** were arrested after an interdiction stop by Caddo Parish Sheriff's Deputies at a Greyhound bus terminal in Shreveport, Louisiana. **WILSON** had in her possession 183 gross grams of Cocaine Powder. Perry had a total of 2,367.5 gross grams of Crack Cocaine base on her person.

13. In a subsequent interview conducted by DEA TFO L.J. Scott on February 4, 2001, **LASHAWNDA WILSON** admitted that she, Perry, and **CRAIG ALEXANDER** went to Amarillo, Texas on February 2, 2001 and met with **CHRIS ALEXANDER** at the Civic Center Inn (records at the motel confirm this). While at the motel, **CHRIS ALEXANDER** assaulted **WILSON** for talking about his drug business to strangers. On February 3, 2001, **CHRIS ALEXANDER** gave **WILSON** the Powder Cocaine and Perry the Crack Cocaine. **CRAIG ALEXANDER** was reportedly present when this occurred. **CHRIS ALEXANDER** drove Perry, **WILSON**, and **CRAIG ALEXANDER** to the bus station. **WILSON** advised they were going to see someone by the name of "Alexus" in Columbus, Georgia. Upon arrival, they were going to call "Alexus" at 706-464-0088. **CRAIG ALEXANDER** was supposed to call **CHRIS ALEXANDER** at 806-535-8550.

14. In an interview of Latricia Perry on February 23, 2001, conducted by DEA S/A Marvin Winham and TFO L.J. Scott, she admitted to selling Crack Cocaine for **CRAIG ALEXANDER** in Lamesa, Texas. Perry advised that **CRAIG ALEXANDER** got his Crack Cocaine from **CHRIS ALEXANDER**. Perry reported that at one time her and **WILSON** were selling Crack Cocaine out of the same residence in Lamesa, Texas. Perry gave the proceeds of her sales to **CRAIG ALEXANDER** and **WILSON** gave the proceeds of her sales to **CHRIS ALEXANDER**. Latricia Perry was asked about the Crack Cocaine left at the Lubbock Airport. Perry advised that she and **CRAIG ALEXANDER** picked **LASHAWNDA WILSON** up at some apartments on 50th street in Lubbock, Texas. **WILSON** was transporting Crack Cocaine in **WILSON's** black and brown backpack. **CRAIG ALEXANDER**, Perry, and **WILSON** then traveled to the Lubbock Airport. Perry and **CRAIG ALEXANDER** dropped **WILSON** off to go inside the airport. Perry was unsure if **WILSON** was going to fly out or if **WILSON** was going to meet someone on the inside and transfer the Crack Cocaine to someone else. **CRAIG ALEXANDER** gave Perry instructions to wait around for awhile and see if **WILSON** needed them. **WILSON** eventually came out and motioned for Perry and **CRAIG ALEXANDER** to drive further down the passenger drop-off and pickup area.

WILSON walked to where they were stopped and got into the car. WILSON stated to Perry that as she was going through the security area, the security officers wanted to search her bag. WILSON told the security officers she would be right back because she had to get an item. WILSON stated that approximately forty thousand ($40,000) worth of Crack Cocaine was inside the bag. WILSON advised that she then left and exited the terminal. CRAIG ALEXANDER, WILSON, and Perry then traveled to a pay phone on the east side of Lubbock, Texas and called CHRIS ALEXANDER. Perry stated that WILSON got on the pay phone and told CHRIS ALEXANDER what had happened. CRAIG ALEXANDER also got on the phone and spoke to CHRIS ALEXANDER. Perry stated that CHRIS ALEXANDER was upset about the Crack Cocaine being lost, but was not mad.

15. Latricia Perry also told S/A Windham that on or about January 27, 2001, CRAIG ALEXANDER asked Perry to go to Amarillo, Texas. Upon arrival, CHRIS ALEXANDER gave Perry three to four pounds of Crack Cocaine. Perry placed the Crack Cocaine in her pants. Once at the Amarillo airport and after going through a security checkpoint, Perry transferred the Crack Cocaine from her pants to a carry-on bag. Perry flew on Delta Airlines to Columbus, Georgia. That same day, Perry said that LASHAWNDA WILSON was also given three to four pounds of Crack Cocaine to transport via bus to Columbus, Georgia. Upon arrival, Perry was picked up by unknown persons. Perry was given some money and stayed in a hotel in Columbus. A day or two later, Perry departed via Greyhound bus from Columbus to Amarillo, Texas. During a stop at the Jackson, Mississippi Greyhound bus terminal, Perry saw WILSON who was still on her way to deliver the Crack Cocaine in Columbus, Georgia. Perry was upset with WILSON, because WILSON was talking with three males concerning the fact that WILSON was transporting Crack Cocaine to Columbus. Later, Perry told CRAIG ALEXANDER. This is what led to CHRIS ALEXANDER assaulting WILSON with a telephone handle at the Civic Center Inn in Amarillo just prior to being arrested in Shreveport, Louisiana on February 4, 2001.

16. Cell phone toll records for 806-535-8550 (CHRIS ALEXANDER's cell phone under the name of LASHAWNDA WILSON) for October 19, 2000 indicate a one minute or less phone call made to 806-438-1986 (CRAIG ALEXANDER's cell phone) at 5:41 p.m. (approximately an hour after the drop off at the Lubbock Airport). Another call was made at 10:41 p.m. Phone tolls also indicate a minute or less phone call to Columbus, Georgia (706-464-0088) on CRAIG ALEXANDER's cell phone at approximately 11:34 p.m. on October 19, 2000. Calls to the Georgia number were also found on October cell phone records for CHRIS ALEXANDER's cell phone. Subscriber records for 706-464-0088 return to Lakeisha Richards at 3043 Drake St., Columbus, Georgia. This address was found recorded on a piece a paper during the execution of a search warrant by the Lamesa Police Department resulting in the arrest of Latricia Perry and Rhodesia Harris on November 2, 2000.

17. In March of 2001, DEA TFSgt. Jerry Brewer and TFO Gaylon Lewis interviewed Mary

Moherman, a former girlfriend of **CRAIG ALEXANDER**. Moherman advised that **CHRIS ALEXANDER** supplied **CRAIG ALEXANDER** with Cocaine. **CHRIS ALEXANDER** would get his Cocaine from unknown sources in Amarillo, Texas. Moherman confirmed that **CRAIG ALEXANDER** had women selling Crack Cocaine for him in Lamesa, Texas. Moherman named Odessa Haney and Latricia Perry as the women who worked for him. Haney was arrested for possession of a controlled substance (Crack Cocaine) in Lamesa, Texas by the Lamesa Police Department on March 1, 2000. In the Lamesa P.D. report written by Sgt. Sandy Lamb, Haney referred to meeting with **CRAIG ALEXANDER** and Dewayne Clark but denied their involvement in her drug activity. Moherman confirmed that **CHRIS ALEXANDER** had women selling Crack Cocaine for him in Columbus, Georgia. Moherman named a "Keisha" or "Lakeisha Bibbs" and a female named "Alexis". Moherman went to Columbus one time to visit "Alexis" and her baby in January of 2000. In a previous telephone conversation, Moherman informed TFSgt. Brewer that the contact cell phone number in Columbus, Georgia was 706-464-0088. Moherman identified two possible addresses **CRAIG ALEXANDER** may have been going to in Columbus, Georgia: 909 Far Road (to an unknown apartment) or 3043 Drake Street.

18. On July 10, 2000 **LASHAWNDA WILSON** was arrested in San Angelo, Texas for Possession of a Controlled Substance under Texas law by Officer Tim Vasquez of the San Angelo Police Department. **WILSON** was observed walking with a known drug user. Officer Vasquez initiated a contact with **WILSON**. **WILSON** initially told Officer Vasquez her name was "Kamisha Simms" but eventually admitted her true identity. **WILSON** gave consent for Officer Vasquez to search two motel rooms that she had rented in San Angelo. One room was rented at the Grande motel and the other at the Motel 6. Officer Vasquez located 4.92 grams of Crack Cocaine concealed in a tube sock in a room at the Motel 6. **WILSON** told Officer Vasquez that she had "sold the other sack." Officer Vasquez also located two thousand dollars ($2,000.00) in U.S. currency in a pocket of some shorts. This was in addition to four hundred ($400.00) dollars that was in a change purse. Additionally several sheets of paper were found on the bed in the room at the Grande motel that indicated **WILSON's** daily amount of money earned which Officer Vasquez described as similar to a ledger. It appeared to Officer Vasquez that **WILSON** was using the room at the Grande motel to sell Crack Cocaine and using the room at the Motel 6 to keep her belongings and larger amounts of money. **WILSON** bonded out jail on July 12, 2000 through Angelo Bail Bonds of San Angelo, Texas. A copy of the "client information sheet" from the bonding company indicates **WILSON's** home address as 2918 E. Auburn, Lubbock, Texas. San Angelo Police Department Task Force Investigator J.P. McGuire discovered that Tina Perry, Charlene Johnson, and **CHRIS ALEXANDER** came down to San Angelo from Lubbock, Texas to pay Angelo Bail Bonds to get **WILSON** released.

Based upon the foregoing information, observations, review of reports by other law enforcement officers and agents and the training and experience of your Affiant and other investigators, I

believe that probable cause exists to believe that the above referenced suspects were involved in and participated in a conspiracy to distribute and possess with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of Cocaine Base (Crack Cocaine) in violation of Title 21, United States Codes, Sections 841(a)(1), 841(b)(1)(A)(iii) and 846.

*Bobby Price*
Bobby Price
Task Force Officer
Drug Enforcement Administration

SWORN TO BEFORE ME THIS THE ____5th____ day of **June, 2001**.

*Nancy M. Koenig*
NANCY M. KOENIG
U.S. MAGISTRATE JUDGE

APPROVED:

*Tanya K. Pierce*
TANYA K. PIERCE
Assistant United States Attorney